ELLA GATES ET VIR V. PAULINE HENSEL ASHER ET AL

No. A-4990. Decided June 1, 1955.
Rehearing overruled July 6, 1955.
(280 S.W. 2d Series 247)

*Henry W. Flagg,* of Galveston, for petitioner.

The majority of the Court of Civil Appeals erred in holding that the deed conveying the lots involved in this appeal was fatally defective because of an insufficient description. Kingston v. Pickens, 46 Texas 99, 101; Wilson v. Smith, 50 Texas 365, 369; Sanderson v. Sanderson, 130 Texas 264, 109 S.W. 2d 744.

*Lockhart, Watson & Peterson,* and *Dudley W. Peterson,* of Galveston, and *J. A. Copeland,* of Houston, for respondents.

In response to petitioners contentions cited Dahlberg v. Holden, 150 Texas 179, 238 S.W. 2d 699; Ogden v. Bosse, 86 Texas 336, Bosse v. Cadwallader (Ogden) in 24 S.W. 798; MacDonald v. Carlisle, 146 Texas 206, 206 S.W. 2d 224.

MR. JUSTICE CULVER delivered the opinion of the Court.

The principal question here concerns the sufficiency of the description of land sought to be conveyed in a warranty deed as follows:

"All that certain land, property and premises located and being situate in the City and County of Galveston, Texas, and commonly known, designated and described as:

"All of Lots Number Ten (10), Eleven (11) and Twelve (12) in Block One Hundred Seventy-five (175), in Denver Resurvey No. 2, together with all improvements, appurtenances and hereditaments thereunto in anywise belonging or appertaining."

The land actually owned by the grantor, used as a homestead for many years, the only land owned by her in Galveston County and presumably that which she intended to convey was Lots 10, 11 and 12 in Block 2, Denver Resurvey, according to the map or plat recorded in Book 91, Page 196, Galveston County Records.

There is no Denver Resurvey No. 2. There is a block 175 in Denver Resurvey in which grantor owned no property. It appears that this Denver Resurvey was a replat of a portion of the original subdivision and Block No. 2 in Denver Resurvey was also designated as "org. (original) 175". The Court of Civil Appeals in its majority opinion reversed the trial court

and rendered in favor of respondents, holding the description to be erroneous and fatally defective. 272 S.W. 2d 585.

Petitioners urge the proposition that the description contains a latent ambiguity, subject to be explained and removed by extrinsic evidence. They say that the description itself contains the means or data by which the land sought to be conveyed can be identified with reasonable certainty.

We are of the opinion that the description does afford a clue or key so that the land may be identified with reasonable certainty and thus adopt the view expressed in the dissenting opinion.

■ While the accepted rule in this jurisdiction employs a rather strict application of the statutes of frauds and conveyances, yet the words of description are given a liberal construction in order that the conveyance may be upheld. Parol evidence is admitted to explain the descriptive words and to identify the land, where the instrument contains the "nucleus" of description. Smith v. Sorrelle, 126 Texas 353, 87 S.W. 2d 703; Miller v. Hodges, 260 S.W. 168 (Com. App.).

■ If enough appears in the description so that a party familiar with the locality can identify the premises with the reasonable certainty, it will be sufficient. Easterling v. Simmons, 293 S.W. 690, er. ref.; Battle v. Wolfe, Texas Civ. App., 283 S.W. 1073, ref.; Pickett v. Bishop, 148 Texas 207, 223 S.W. 2d 222; Phillip v. Burns, 151 Texas 614, 252 S.W. 2d 927.

To be sure no decision is found squarely applicable to these facts, though the general rules of construction have been applied by our courts time and time again.

One of these cardinal rules universally accepted is that all words and phrases are to be construed together. It is to be presumed that each word has some significance and meaning. All are to be harmonized, if possible. Scheller v. Groesbeck, Texas Com. App., 231 S.W. 1092.

■ There is no ambiguity or defect in the description on its face, but other factors must be given consideration. Upon examination of the records it is disclosed that there is no Denver Resurvey No. 2. Looking at the plat of Denver Resurvey the searched finds a block designated "2" and the same block designated as "org. 175." The figure "2" in the description must have

been inserted for some purposes. It cannot refer to the lots because they are designated as 10, 11 and 12. It cannot refer to the survey because there is only one Denver Resurvey. It would require no strained deduction to assume, therefore, that the "No. 2" designates the block and particularly is this so when the plat reveals a block designated as "2" and also as "org. 175."

The testimony of the surveyor-witnesses was substantially to the effect that, taking into consideration all the words and figures in the description and applying them to the map of Denver Resurvey, they could identify the land as "Lots Nos. 10, 11 and 12, original Block 175, Block No. 2 Denver Resurvey." The County Assessor and Collector also testified that he could definitely locate the land from the description contained in the deed. The jury found that the description in question "is sufficient to enable a party familiar with the locality to identify any tract or parcel of land with reasonable certainty to the exclusion of any and all other tracts or parcels of land."

By adopting the construction above all parts of the description are reconciled and the land is identified with reasonable certainty.

A reasonable certainty is all that the law requires. Conviction beyond all peradventure of doubt is unnecessary. Mansel v. Castles, 93 Texas 414, 55 S.W. 559, 560. In that case the court supplied by construction an entire call missing from the deed and held in part as follows:

"While, therefore, the proposition that the calls of the description in question correct themselves and show the land intended to be described, is not capable of mathematical demonstration, yet that it is true is reasonably certain. Upon such certainty we act in all the highest concerns of life, and it is sufficient for the purpose of the law."

The respondent relies on Texas Osage Cooperative Royalty Pool v. Colwell, Texas Civ. App., 205 S.W. 2d 93, 94, ref. n.r.e., and maintains that the facts in that case are strikingly similar and almost identical to those under consideration here. There the land was described as the " 'West 160 acres in Sec. 16, Block P'," whereas the intention evidently was to convey the "West 160 acres in Sec. 16, Block S." There was no Section 16 in Block P, but there was a Section 16 in Block S. It was held that no latent ambiguity appeared permitting the introduction of extrinsic evidence.

In our case if the "No. 2" had been eliminated and the description in the deed read "Lots 10, 11 and 12, Block 175, Denver Resurvey," then probably the respondents would be correct and the holding in that case might apply here. The "No. 2" in the present description, however, makes the critical distinction and thus Texas Osage does not control.

In Dahlberg v. Holden, 150 Texas 179, 238 S.W. 2d 699, 701, cited by respondent, the description read: " 'An undivided interest in all those certain tracts, pieces or parcels of land owned by me or to which I have any claim, * * *'." The court found no clue or key which would determine the quantity of interest conveyed, and held that it had no right to interpolate or eliminate terms of material legal consequence in order to uphold it. Here we do not need either to interpolate or to eliminate any terms in this description to hold that it is sufficient. We neither add to nor take away.

■ Our holding does not run counter to Wilson v. Fisher, 114 Texas 53, 188 S.W. 2d 150, 152. In that case the instrument did not give the lot and block number, nor the amount of land, nor describe the property as any particular tract or as situated in any city, county or state. Also a room at the rear of the property was not included, yet there was no intimation as to the exact portion of the land excluded. In holding the description insufficient the court reaffirmed the well established principle that "the writing must furnish within itself or by reference to some other existing writing, the means or date by which the particular land to be conveyed may be identified with reasonable certainty." Osborne v. Moore, 112 Texas 361, 247 S.W. 498.

The writing here within itself and by reference to "Denver Resurvey" furnishes the "means or data" to comply with the rule.

The respondent as appellant complained to the Court of Civil Appeals of the refusal of the trial court to submit their requested issue bearing on the question of undue influence exerted by petitioner, Ella Gates, over her mother in procuring the execution of the deed. This point was overruled by the Court of Civil Appeals and we think properly so.

■ A deed from a parent to a child does not give rise to the presumption of undue influence. Thus the burden of proof rested upon respondents on this issue. In neither the brief filed by respondents in the Court of Civil Appeals nor in their brief filed

here do they refer to any evidence which would authorize the submission of this issue. All that is shown is the frail, enfeebled condition of the mother and the fact that the petitioner had lived with her mother off and on for a number of years.

Respondent relies on the presumption of fraud or undue influence under certain circumstances where the grantee occupies a confidential or fiduciary relationship to the grantor, and cites 14 Texas Jur., Sec. 91, pp. 862-863. This rule does not apply to the transaction between a mother and daughter. Hager v. Hager, Texas Civ. App., 127 S.W. 2d 234, and Beville v. Jones, 74 Texas 148, 11 S.W. 1128; Besteiro v. Besteiro, Texas Com. App., 65 S.W. 2d 759; Trezevant v. Rains, Com. App., 19 S.W. 567; (on rehearing 85 Texas 329;) Pierson v. Pierson, 57 S.W. 2d 633, wr. ref.

The judgment of the Court of Civil Appeals is affirmed in part and reversed in part and the judgment of the district court is affirmed.

Opinion delivered June 1, 1955.

MR. JUSTICE GRIFFIN, joined by JUSTICE BREWSTER, dissenting.

I find myself unable to agree with the majority opinion that the deed in question furnishes a key, or data, whereby the land sought to be conveyed may be identified.

The majority opinion says "there is no Denver Resurvey No. 2," and in another portion of the opinion it is stated that "upon an examination of the records it is disclosed that there is no Denver Resurvey No. 2." There is only one "Denver Resurvey" found in the records. Therefore, the designation of a Denver Resurvey "No. 2" is false. To determine in what survey the land is located we must eliminate from the description the word and figure "No. 2." It is only by thus eliminating the false description "No. 2" that we can ever put the property in the existing "Denver Resurvey." With this false description eliminated, we find our description placing the land in "Block One Hundred Seventy-five (175, in Denver Resurvey." There is a block "175" in the Denver Resurvey, but the grantor in this instrument did not own lots 10, 11 and 12 therein; therefore, this deed could convey no title to such lots.

It is argued in the majority opinion that by "Block 175, Den-

ver Resurvey" is meant Block 175 of the original townsite of Galveston, Texas. The answer is that the only key, or data, given by the deed to locate Block 175 is that such block is located in the Denver Resurvey. The instrument nowhere says that by "Block 175" is meant only a block by such number in the original townsite of Galveston. According to the description in the deed, it could as well be contended that the "Block 175" referred to any or all additions or subdivisions in the town of Galveston where in a block "No. 175" is found as that the deed refers *only* to the *original* townsite for the location of this particular block. This construction would leave to the whim of the particular party seeking to locate the land the designation of the addition in which "Block 175" can be located. The deed only refers to "Block 175 Denver Resurvey" and there is not one word, sign, key, data, or means given in the deed whereby "Block 175" can be located at any place except in Denver Resurvey. To put such block at any other place is the pure figment of imagination and speculation of every person reading the deed. One person would put Block 175 in one addition; another person in a second addition and a third person in a third and entirely different addition, and each would have as much logic to support his location as will support the location in the original townsite of Galveston, Texas. The deed just does not contain any key whereby the original addition can be selected for the location, over every other addition to the City of Galveston save the Denver Resurvey. To locate the lots in "Block 175 Denver Resurvey" is fatal to petitioners' contention. If "No. 2" should be transposed to read "In No. 2 Denver Resurvey" or a comma supplied so as to read "Denver Resurvey, No. 2," we are still confronted with the further designation in the description "Block 175." So that to distinguish it then from Block 175 in Denver Resurvey, we must interpolate or add to the description the word "original," all of which the authorities cited above seem to forbid.

The rule to be applied in cases where a part of a description is false is set out in very plain words in the case of Reserve Petroleum Co. v. Harp, 1950, 148 Texas 448, 226 S.W. 2d 839, 841, as follows:

"The case is one for the application of the rule that the part of a description that is false will be disregarded or rejected as surplusage and the deed will be sustained as valid if, after the rejection of what is false, the remaining words of the description are sufficient to identify the land with certainty. Arambula v. Sullivan, 80 Texas 615, 619-620, 16 S.W. 436; Cartwright v. Trueblood, 90 Texas 535, 538-539, 39 S.W. 930; Maupin v.

Chaney, 139 Texas 426, 431, 163 S.W. 2d 380; Vaughn v. Continental Royalty Company, 5 Cir., 116 F. 2d 72. * * *"

In the case at bar I have demonstrated that when the false description "No. 2" is eliminated, the description left does not identify the land sued for.

It has often been said that the contract must "furnish within itself, or by reference to some other existing writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty." Wilson v. Fisher, 114 Texas 53, 188 S.W. 2d 150, 152; Broaddus v. Grout, 152 Texas 398, 258 S.W. 2d 308; Tidwell v. Cheshier, 153 Texas 194, 265 S.W. 2d 568; Small v. Morris, 152 Texas 192, 255 S.W. 2d 174; Stekoll Petroleum Co. v. Hamilton, 152 Texas 182, 255 S.W. 2d 187. This description does not furnish any key or reference to any other writing whereby the land to be conveyed may be identified with reasonable certainty. The property described by the deed simply does not exist.

In Dahlberg v. Holden, 150 Texas 179, 238 S.W. 2d 699, we quoted with approval the doctrine expressed in 13 C. J., Contracts, Section 496, p. 535; 17 C. J. S., Contracts, Sec. 308. "While the courts should avoid, if possible, holding a contract void on the ground of uncertainty, they have no right to interpolate or to eliminate terms of material legal consequence in order to uphold it. * * *" The language must be construed as written. The Court has no right to alter it by interpolation or substitution.

I agree with the majority view of the Court of Civil Appeals that the description is insufficient under the Statute of Frauds, and therefore I would affirm the judgment of that Court.

Opinion delivered June 1, 1955.

Rehearing overruled July 6, 1955.