

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00757-CV

**LUCKENBACH RANCH, LLC** and Firefly Partners, LLC D/B/A Firefly Partners Land, LLC,
Appellants

v.

Troy **BOWLING** and Kim Bowling,
Appellees

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. 17005
Honorable Albert D. Pattillo, III, Judge Presiding

Opinion by:     Rebeca C. Martinez, Chief Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                H. Todd McCray, Justice
                Velia J. Meza, Justice

Delivered and Filed: February 4, 2026

AFFIRMED

Appellants Luckenbach Ranch, LLC and Firefly Partners, LLC d/b/a Firefly Partners Land, LLC, appeal from a final judgment — premised on an interlocutory summary judgment — recognizing and defining the route of a road easement in favor of appellees Troy Bowling and Troy's wife, Kim Bowling. In three issues, appellants contend that the trial court erred in granting summary judgment on the Bowling's claims of express easement, easement by estoppel, and estoppel by deed. We affirm.

# I. BACKGROUND

The sixty-two acres of land that is the subject of the underlying dispute once belonged to Wendy Williams, Troy's sister. According to affidavit testimony by Kim, Williams offered to sell approximately 15.5 acres of land off of the sixty-two-acre parcel, which was located at 5412 Ranch Road 1396 in Fredericksburg, Texas. Kim, a realtor, prepared a purchase agreement that Williams signed. The agreement was amended to account for a renumbering of the address of the parcel the Bowlings would purchase — as opposed to the portion that Williams would retain — from 5412 to 5528. Before closing, the Bowlings' lender required a written easement. Kim filled in a template document titled "Private Road Maintenance Agreement," and she forwarded it to Williams. The agreement provides:

> This Agreement is entered to be effective *upon purchase/funding of 5528 Ranch Road 1376 Fredericksburg, TX 78624 June 2019* by and between *Wendy Williams* ("GRANTOR" herein) and *Troy and Kimberly Bowling* ("GRANTEE" herein).
>
> WITNESSTH:
>
> WHEREAS, GRANTOR is the owner of property described as: *5412 Ranch Road 1376 Fredericksburg, Texas 78624*
>
> WHEREAS, GRANTEE is the owner of property described as *5528 Ranch Road 1376 Fredericksburg, Texas 78624*
>
> GRANTOR agrees to grant access and maintain road entry for easement purposes, (referred to herein as "Easement") being more particularly described and located as: *Gated Entry-5412 Ranch Road 1376 Fredericksburg, Texas 7624* [sic]

Williams e-signed the document via "Dotloop." Williams's signature is e-dated June 4, 2019. Later, Troy and Kim counter signed the document, and it was filed with the Gillespie County Clerk. Williams, according to Kim's affidavit testimony, continued living on a home on the Bowlings' newly purchased property until August 2020.

In May 2021, Williams sold the remaining 46.5 acres to Luckenbach. The warranty deed for this transaction excluded a "Private Road Maintenance Agreement and Access Easement executed by Wendy Williams to Troy Bowling and Kimberly Bowling, dated June 4, 2019, recorded under Register No. 20213044, Official Public Records of Gillespie County, Texas."

In November 2021, Luckenbach sold approximately six acres of the property it had acquired from Williams to Firefly. The general warranty deed for this transaction specifically provided for "Rights of adjoining property owner(s) use of the gravel roads and asphalt road traversing subject property, as shown on survey dated July 21, 2021, prepared by Jeff Boerner, Registered Professional Land Surveyor No. 4939." That survey provides in relevant part:

> BEGINNING at a 1/2" Iron rod found in the southwest right-of-way line of RM No. 1376, (80' right-of-way Volume 79, Pages 606-608, Deed Records of Gillespie County, Texas), at the north corner of the herein described tract, the north corner of the remaining portion of the called 114.7 acre tract, said point being the northeast corner of a called 47.50 acre tract, recorded in Document No. 20211344, Official Public Records of Gillespie County, Texas[.]

The Bowlings filed suit for declaratory and injunctive relief against Luckenbach and Firefly. The Bowlings then moved for a traditional summary judgment, attaching, among other things, affidavits that they executed, the road maintenance agreement, and the aforementioned deeds. The Bowlings sought summary judgment on express easement and easement by estoppel grounds. Luckenbach and Firefly responded to the Bowlings's motion. The trial court signed an order granting the Bowlings a summary judgment.

Several months later, the trial court held what the reporter's record terms was a "bench trial." However, no witnesses testified and no exhibits were admitted into evidence. Instead, the Bowlings represented that Luckenbach and Firefly "closed [the original easement's] entrance with TxDOT and reopened another entrance that's a little bit to the north." The Bowlings elaborated that "it's sort of like . . . we can go to TxDOT, close this, and it's sort of king's X, tough luck guys,

you don't have an easement anymore." The Bowlings requested that the final judgment specifically delineate the path of the road easement through an attachment to the final judgment. Luckenbach stipulated to the fact that the easement had been moved. Firefly objected to the map attachment as having "never been admitted into evidence" and never seeing "it before it was attached to the proposed judgment today."

The trial court signed a final judgment that recognized it had conducted a "bench trial" and considered "the evidence, pleadings, previous rulings, and arguments of counsel." The trial court found that the Bowlings had a "permanent ~~equitable~~ easement across" Luckenbach's and Firefly's property by reference to three surveys and the map discussed at the hearing. Luckenbach and Firefly timely appealed.

## II. DISCUSSION

### A. Standard of Review

The movant for traditional summary judgment bears the burden of demonstrating that (1) no genuine issue of material fact exists, and (2) it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). If the movant produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to respond to the motion and present any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979); *see also Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). We must affirm a summary judgment if any of the grounds asserted in the motion are meritorious. *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004).

**B.** **Sufficient Identification of the Servient Estate**

In appellants' first issue, they argue that the Private Road Maintenance Agreement violates the statute of frauds in relation to the Bowlings' express easement claim because it does not contain an adequate description of the location, width, scope, "means or data," or beginning and ending points of the easement. The Bowlings reference *Southwestern Electric Power Company v. Lynch*, 595 S.W.3d 678, 690 (Tex. 2020), for the rule that "[t]he use of a general easement without a fixed width is a strategic decision that does not render an easement ambiguous or require a court to supply the missing term." In appellants' reply brief, they argue that *Southwestern Electric* "deal[s] principally with the omission of a specified width in the grant of an easement, not a missing or undefined location."

In *Cemex Construction Materials South, LLC v. Tejas Avco, Inc.*, No. 14-24-00268-CV, 2025 WL 2114316, at *5 (Tex. App.—Houston [14th Dist.] July 29, 2025, no pet.) (mem. op), the agreement at issue granted Tejas an easement over the surface estate of the 125-acre and 94-acre tracts "in order to allow Tejas to travel to and from Fenn Road to the Wood Crossing." Cemex argued that the agreement violated the statute of frauds because it contained no metes and bounds description of the easement. *Id*. at *4. The Fourteenth Court of Appeals found that "[t]his language is sufficient to determine the servient estate that will be burdened by Tejas's easement and thus is sufficient to satisfy the statute of frauds." *Id*. at *5.

The court in *Cemex* referenced *Vinson v. Brown*, 80 S.W.3d 221, 227 (Tex. App.—Austin 2002, no pet.), wherein another one of our sister courts explained:

> Certainly, the Hobbs deed uses vague language and does not contain a metes and bounds description of the park. With express easements, however, an exact designation of location is unnecessary, as long as the tract of land that will be burdened by the easement is sufficiently identified. The Hobbs deed sufficiently identifies the land to be burdened by its reference to "Block No. One (1) of a subdivision out of said survey made by Viggo Miller." It then describes the location

for the easement in general terms, with the provision that the exact boundaries of the park will be marked and established by Draper at a later time. Although Draper never marked and established these boundaries, this inaction does not cause the grant to fail. We evaluate whether a description of land is sufficient to comply with the Statute of Frauds as of the time the parties contracted. At the time the grant was made, the provision for Draper to choose the park's boundaries, within a generally-described area, furnished the means to identify the property interest conveyed with reasonable certainty. We therefore conclude that the description of the park in the Hobbs deed is legally sufficient to satisfy the Statute of Frauds.

*Cemex Constr. Materials S., LLC*, 2025 WL 2114316, at \*5 (quoting *Vinson*, 80 S.W.3d at 227).

We have referenced *Vinson* for the rule that "'an exact designation of location is unnecessary, as long as the tract of land that will be burdened by the easement is sufficiently identified,' and inaction in failing to mark and establish the boundaries of an easement at the time the grant is made 'does not cause the grant to fail.'" *Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mountain Ranch, Inc.*, 426 S.W.3d 800, 803 (Tex. App.—San Antonio 2014, pet. denied) (quoting *Vinson*, 80 S.W.3d at 227). This rule is in turn founded upon precedent from the Texas Supreme Court that "[i]f enough appears in the description so that a person familiar with the area can locate the premises with reasonable certainty, it is sufficient to satisfy the Statute of Frauds." *Vinson*, 80 S.W.3d at 227 (citing *Gates v. Asher*, 280 S.W.2d 247, 248–49 (Tex. 1955)).[1]

In this case, Kim testified by affidavit that:

On June 6, 2019, the transaction closed, and a Warranty Deed with Vendor's Lien was signed. A true and correct outline of the properties that accurately depicts the boundaries and ownership immediately after our purchase, is attached hereto as Exhibit "A-2." On Exhibit A-2, our property is outlined in red, and Wendy Williams' property is outlined in yellow. At the time of closing there was a street address sign stating "5412" at the Gated Entry to the paved roadway leading to our property.

---

[1] We note that appellants reference *Schuhardt Consulting* for the rule that "[i]f an easement does not sufficiently describe the interest conveyed, the conveyance is void." *Schuhardt Consulting*, 426 S.W.3d at 803 (quoting *West Beach Marina, Ltd. v. Erdeljac*, 94 S.W.3d 248, 264 (Tex. App.—Austin 2002, no pet.)). Our recitation of this rule flows into the next paragraph, which begins with, "[E]ven if an easement is uncertain, however, a court is not authorized to completely ignore the right granted, if the easement is susceptible to a reasonable construction as to its true intent and meaning." *Id.* (internation quotation marks and citation omitted). Our reference to *Vinson* is in this following paragraph, which appellants fail to appreciate.

At the time of closing, Wendy Williams was living in a home on the property that we purchased. Wendy Williams was using a paved roadway to access the home on our property, and continued to do so until August of 2020, when she moved out of the house on our property. Sometime after Wendy Williams moved out of the house, she placed a fence across the paved roadway. Around this time there was pending litigation between Wendy and her mother on an adjacent property, and Wendy filed a TREC Complaint against me for items unrelated to the roadway. To keep the peace, we temporarily accessed their property through an adjacent property owned by Troys' mother. We subsequently began to use the paved roadway again to access our property after Wendy sold her remaining property to Luckenbach Ranch, LLC.

Appellants direct us to no evidence contesting Kim's assertions.

Like the appellant in *Cemex*, appellants' argument labors under the misapprehension that the Private Road Maintenance Agreement needed to define the location, width, "means or data," or beginning and ending points with metes and bounds precision. However, "[g]eneral language specifying a purpose for the easement without defining its precise parameters has been held sufficient to confer an easement." *Placke v. Lee-Fayette Counties W.C.I.D. No. 1*, No. 03-04-00096-CV, 2005 WL 1034075, at *4 (Tex. App.—Austin May 5, 2005, pet. denied) (mem. op.). Appellants presented neither argument nor evidence that "5412 Ranch Road 1376 Fredericksburg, Texas 78624" was any other tract of land besides the tract retained by Williams and later passed on to Luckenbach and then Firefly. In other words, there was no question of material fact regarding Williams's tract being the servient estate. *See Cemex Constr. Materials S., LLC*, 2025 WL 2114316, at *5 (holding the record determined the servient estate that would be burdened by the dominant estate).

Appellants reference *Wilson v. Fisher*, 188 S.W.2d 150, 152 (Tex. 1945), a case dealing with a contract for the sale of land, for the rule that "resort to extrinsic evidence, where proper at all, is not for the purpose of supplying the location or description of the land, but only for the purpose of identifying it with reasonable certainty from the data in the memorandum." The court

noted that "the instruments do not specifically indicate that [the seller] is the owner of the property. The lot and block number and the amount of land is not given, nor is the property designated as any particular named tract or as situated in any city, county or state." *Id*. at 56. The Private Road Maintenance Agreement notes that the property in question is located in "Fredericksburg, Texas." Moreover, appellants fail to explain how the rule in *Wilson* relates to the rule in *Gates*, 280 S.W.2d at 248–49, that has been followed by *Vinson*, 80 S.W.3d at 227, *Cemex*, 2025 WL 2114316, at *5, and us in *Schuhardt Consulting*, 426 S.W.3d at 803.

We overrule appellant's first issue.

## C. Scope of the Easement

In appellants' second issue, they argue that the phrases "road entry," "gated entry," and "access and maintenance" in the Private Road Maintenance Agreement cannot support an express easement because these terms are "no expression of intent by Ms. Williams to grant anything more than that." Appellants reference *Cummins v. Travis County Water Control & Improvement District No. 17*, 175 S.W.3d 34, 51 (Tex. App.—Austin 2005, pet. denied), for the rule that "the intent of the parties, the essential terms of the easement, and an adequate description of the easement's location must be apparent from the face of the document, without reference to extrinsic evidence." In *Cummins*, the court determined that the easement language was for "domestic use," and that mooring a boat dock, as the appellants wanted to do, was not "reasonably necessary" to achieve the rights that were expressly granted. *Id*. at 51–52.

When a term in the easement agreement is not specifically defined, that term should be given its ordinary, plain, and generally accepted meaning. *DeWitt County Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999). "Road" may be defined as "an open way or public passage for vehicles, persons, and animals." Road, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY

UNABRIDGED (2002), p. 1963. "Gated" may be defined as "having or controlled by a gate." *Id*. at 939. "Entry" may be defined as "the place or point at which entrance is made." *Id*. at 759. "Access" may be defined as "a landowner's legal right to pass from his land to a highway and to return without being obstructed." *Id*. at 11. "Maintenance" may be defined as "the labor of keeping something (as building or equipment) in a state of repair or efficiency." *Id*. at 1362.

Even liberally construing appellants' argument, the passage "GRANTOR agrees to grant access and maintain road entry for easement purposes" served as the granting of a road easement to the grantees, the Bowlings, even under *Cummins*, 175 S.W.3d at 51.

**D.      Relocation of Easement's Entrance**

In appellants' third issue, they complain that the trial court erred in granting a "summary judgment" on a "never-introduced-into-evidence depiction," which varies from the location initially claimed by the Bowlings. Appellants contend that there is an issue of material fact as to the existence and location of the easement that precluded the trial court from rendering a summary judgment. Aside from the general authority governing the standard of review of summary judgments, appellants cite no legal authority for their contention. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). The Bowlings counter by emphasizing that, at the bench trial, Luckenbach stipulated that the entrance had moved.

Appellants misapprehend the procedural posture of the case. The interlocutory summary judgment order did not specify the location of the roadway easement. That location was declared in the final judgment that followed the bench trial. Accordingly, appellants fail to frame their complaint in the appropriate standard of review. *See generally, Saad v. Valdez*, No. 14-15-00845-CV, 2017 WL 1181241, at *7 (Tex. App.—Houston [14th Dist.] Mar. 30, 2017, no pet.) (mem.

op.) ("We consider evidence presented at the bench trial only in addressing [appellant's] appellate arguments challenging the trial court's judgment with regard to the specific issues litigated and decided at the bench trial.").

We overrule appellant's third issue.[2]

### III. CONCLUSION

We affirm the judgment of the trial court.

Rebeca C. Martinez, Chief Justice

---

[2] Because we have upheld the grant of summary judgment based on the ground of an express easement, we need not address appellants' challenges to the alternative grounds of an easement by estoppel or estoppel by deed. *Minihan v. O'Neill*, No. 04-18-00847-CV, 2020 WL 444381, at *4 (Tex. App.—San Antonio Jan. 29, 2020, no pet.) (mem op.) (citing *Knott*, 128 S.W.3d at 216).