**Charles R. WIGGINS and, R. Zachary Tonroy, Appellants,**

v.

**Glen S. CADE, Appellee.**

**No. 12–08–00329–CV.**

Court of Appeals of Texas, Tyler.

May 5, 2010.

Frank R. Parish, Houston, Donald R. Tonroy, for Appellant.

Daryl L. Derryberry, Tyler, Gregory D. Smith, for Appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

### OPINION ON REHEARING

JAMES T. WORTHEN, Chief Justice.

Glen S. Cade has filed a motion for rehearing, which is overruled. We withdraw our opinion of January 29, 2010 and substitute the following opinion in its place.

Both Appellants, Charles R. Wiggins and R. Zachary Tonroy, and Appellee, Glen S. Cade, claim title to the same 1/64 nonparticipating royalty interest in the oil and gas produced and saved from a gas well in Rusk County. Cade filed a petition for declaratory judgment and to quiet title. By summary judgment, the trial court determined that Cade is the owner. Wiggins and Tonroy contend in two issues that the trial court erred. We reverse and remand for further proceedings.

### BACKGROUND

On September 28, 2004, Dale Resources (East Texas), L.L.C. ("the developer")

| Grantor | Grantee | Date of Deed | Date Deed Recorded |
|---------|---------|--------------|---------------------|
| William Thomas Crook | Charles Wiggins | 10/14/04 | 10/20/04 |
| David Rinehart | Charles Wiggins | 11/16/04 | 11/18/04 |
| William Thomas Crook | Glen Cade | 1/20/06 | 1/23/06 |
| David Rinehart | Glen Cade | 1/23/06 | 1/24/06 |

The January 20, 2006 deed from W.T. Crook to Cade stated that the "[e]ffective date of this Deed is 1–20–04." The deed from Rinehart to Cade, dated January 23, 2006, stated that the "[e]ffective date of this Deed is 2–20–04."

filed an application for appointment of a receiver for the 1/32 nonparticipating royalty interest jointly owned by B.F. Crook and Mildred Andrene Crook Higginbotham Goad because it could not find Crook and Goad.[1] In an "Agreed Order Determining Ownership of Mineral Interest Under Judgment Approved by the Court and Distribution of Funds Held by the Registry of the Court for Glen Cade," signed February 1, 2006, the court found that William Thomas Crook ("W.T. Crook") and Edward Howard Stewart had inherited Goad's 1/64 interest. Further, the court found that Stewart's interest had been inherited by David E. Rinehart, and then W.T. Crook's and Rinehart's interest had been transferred to Cade. The order was signed and agreed as to form by the receiver and the attorneys for Cade, Goad, and the developer.

The record shows further that between the time the developer filed its application for a receiver and the time the court entered its order determining ownership, W.T. Crook and Rinehart had executed two sets of deeds, first to Wiggins (royalty deeds) and subsequently to Cade (mineral deeds) as shown below:

Then, in a proceeding after the receivership, Cade sought a declaratory judgment and to quiet title asserting that Wiggins and Tonroy did not have a valid claim to the nonparticipating royalty interest.[2] Cade later filed a motion for summary judgment based on two legal theories.

---

1. It is undisputed that the controversy here does not extend to the 1/64 interest of B.F. Crook. Therefore, B.F. Crook's interest will not be discussed further.

2. Wiggins had conveyed part of his interest to Tonroy.

First, he claimed that the royalty deeds from Crook and Rinehart to Wiggins violated the statute of frauds because they contained an insufficient legal description and were therefore void. Second, Cade claimed that title to the 1/64 nonparticipating royalty interest had been fully litigated in the receivership action and that the doctrine of collateral estoppel precluded it from being litigated again. The trial court granted summary judgment for Cade without specifying which legal theory provided the basis for its ruling. Wiggins and Tonroy timely filed this appeal.

### STANDARD OF REVIEW

We review the trial court's decision to grant a summary judgment de novo. *Tex. Mun. Power Agency v. Pub. Util. Comm'n,* 253 S.W.3d 184, 192 (Tex.2007). The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). To prevail on a summary judgment, a plaintiff must conclusively prove all elements of his cause of action as a matter of law. *See MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986). Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion and present to the trial court any issues that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678–79 (Tex.1979). An appellate court reviewing a summary judgment must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion. *Goodyear Tire & Rubber Co. v. Mayes,* 236 S.W.3d 754, 756 (Tex.2007). If the trial court's order does not specify the grounds on which it granted summary judgment,

we affirm if any of the grounds specified in the motion are meritorious. *See Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 216 (Tex.2003).

### STATUTE OF FRAUDS

In their first issue, Wiggins and Tonroy contend that the trial court erred in granting summary judgment based on the statute of frauds. They assert that there is a question of fact regarding whether the description in their royalty deeds is legally sufficient.

#### *Summary Judgment Evidence*

The royalty deeds from Crook and Rinehart, in October and November of 2004 respectively, contained the same legal description as follows:

> BEGINNING at an offset corner, same being the northwest corner of a tract of 45 acres of land formerly owned by Mrs. Kate Crook;
>
> THENCE South with East boundary line of the Seelbach tract 335 varas to southeast corner of said Seelbach tract on North boundary line of J.H. White 119 acre tract;
>
> THENCE East with north line of said White tract 268 varas to Northeast corner of same, a stake for corner;
>
> THENCE South 10 deg. 1160 varas to corner on North boundary line of G.W. Coats 150 acre tract to the northeast corner of same;
>
> THENCE North 3 deg. West 1031 varas to a corner at a fence, same being the West boundary line of land owned by Tipps and Rogers;
>
> THENCE West with an old fence 110 varas to corner at an old fence;
>
> THENCE North 10 deg. West with an old fence 487 varas to the Northeast corner of Mrs. Kate Crook's 45 acre tract;

THENCE West with the North boundary line of said 45 acre tract, 756 varas to the place of beginning, containing 169.31 acres of land, more or less.

As part of his summary judgment evidence, Cade offered the affidavit of R.E. (Bob) Peyton, Jr., a registered professional land surveyor who had twenty-four years of experience in Texas. Peyton stated that he could not locate the property on the ground with reasonable certainty based on the legal description in the deeds because it contained neither the name of the survey or the abstract number in which the property was situated.

Wiggins and Tonroy filed an affidavit by Donald R. "Tex" Tonroy, a petroleum landman, in response to Cade's summary judgment motion. In his affidavit, Tonroy stated that he had been a petroleum landman for more than thirty years in Texas and had been licensed to practice law in Texas for fourteen years. During that time, he examined public records for the purpose of determining mineral, royalty, and working interest ownership. He stated that by using the description in the two royalty deeds and by examining the public records of the county clerk of Rusk County, Texas, he determined that the forty-five acres formerly owned by Mrs. Kate Crook was located in the M.V. Peña Survey, A–27, of Rusk County, Texas. He stated that he was able to determine this information from a search for Kate Crook in the grantor/grantee indices of the Rusk County clerk's office. He stated that this was the only forty-five acre tract that Kate Crook ever owned in Rusk County and that therefore he was able to locate the land described in the two royalty deeds with reasonable certainty.

### Applicable Law

The sufficiency of the legal description in any instrument transferring a property interest is a question of law and subject to a de novo review. *Dixon v. Amoco Prod. Co.*, 150 S.W.3d 191, 194 (Tex.App.-Tyler 2004, pet. denied). An instrument conveying land must contain a sufficient legal description or the instrument is void under the statute of frauds. *Id.* A property description is sufficient if the writing furnishes within itself or by reference to some other writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty. *AIC Mgmt. v. Crews*, 246 S.W.3d 640, 645 (Tex.2008). A recital of ownership in a deed may be used as an element of description and may serve as a means, together with some other element, of identifying the land with reasonable certainty. *Broaddus v. Grout*, 152 Tex. 398, 402, 258 S.W.2d 308, 310 (1953). Where the deed contains some data susceptible of being connected, by parol testimony, with some definite land, the description is in law sufficient. *Ehlers v. Delhi–Taylor Oil Corp.*, 350 S.W.2d 567, 573 (Tex.Civ.App.-San Antonio 1961, no writ.). A deed is not void for uncertainty unless on its face the description cannot, by extrinsic evidence, be made to apply to any definite land. *Jamison v. City of Pearland*, 489 S.W.2d 636, 641 (Tex.Civ.App.-Houston [1st Dist.] 1972, writ ref'd n.r.e.). If enough information appears in the description so that a party familiar with the locality can identify the premises with reasonable certainty, it will be sufficient. *Gates v. Asher*, 154 Tex. 538, 541, 280 S.W.2d 247, 248–49 (1955).

### Analysis

Peyton's affidavit stated the legal description was insufficient to locate the property on the ground because it did not contain the survey name and abstract number. Kate Crook's name appeared in the legal description as the former owner of a forty-five acre tract bordering the land at issue. Tonroy showed in his affi-

davit that by searching the grantor/grantee indices located in the office of the Rusk County clerk for the name of Kate Crook, he found documents identifying the subject property's survey name and abstract number. With this data, he was then able to identify the land described in the two royalty deeds from Crook and Rinehart to Wiggins with reasonable certainty.

█ Cade contends that Tonroy's affidavit was not sufficient evidence to defeat his motion for summary judgment. He asserts that a deed must furnish within itself, or by reference to some other existing writing, the means or data by which the land to be conveyed may be identified with reasonable certainty. He argues that the deeds here do neither. He further argues that the generic reference to Kate Crook's land cannot be used to identify the land at issue. We disagree. An individual can use parol evidence to connect data described in the instrument, such as the name of a land owner, to establish the sufficiency of a legal description. *See Ehlers,* at 568–573. This is just what the Tonroy affidavit explained. We hold that Cade did not meet his burden to establish as a matter of law the insufficiency of the legal description in the two royalty deeds of October and November 2004 from Crook and Rinehart to Wiggins. *See Jones,* 710 S.W.2d at 60. We sustain Wiggins and Tonroy's first issue.

### COLLATERAL ESTOPPEL

In their second issue, Wiggins and Tonroy assert that the trial court erred in granting summary judgment for Cade on the basis of collateral estoppel. They contend that Cade did not establish all of the necessary elements of collateral estoppel as a matter of law, and he is therefore not entitled to summary judgment on this ground. We agree.

### Summary Judgment Evidence

In support of his motion for summary judgment, Cade presented the 2004 application for appointment of receiver; an agreed order determining ownership of the nonparticipating royalty interest signed February 1, 2006; the two deeds from W.T. Crook, one royalty deed to Wiggins and one mineral deed to Cade; and the two deeds from Rinehart, one royalty deed to Wiggins and one mineral deed to Cade. The application for receivership recited that it had been filed by the developer so that it could produce and develop the minerals in the area. The developer requested only the following powers for the receiver:

1) To negotiate, make, and enter into a ratification of oil and gas leases and mining contracts on the interest.

The agreed order determining ownership of the nonparticipating royalty interest explains that W.T. Crook and Rinehart inherited their interests through Goad and then makes the following one sentence declaration:

The court finds that William Thomas Crook and David E. Rinehart have transferred all of their respective interests to Glen S. Cade, Individually, such that the ownership of Mildred Andrene Crook Higginbotham Goad's complete interest is now vested in Glen S. Cade, Individually.

The receiver and the attorneys for Goad, Cade, and the developer agreed to the order's form.

### Applicable Law—Collateral Estoppel

█ The doctrine of collateral estoppel precludes relitigation of ultimate issues of fact actually litigated and essential to the judgment in a prior suit. *Getty Oil Co. v. Ins. Co. of N. Am.,* 845 S.W.2d 794, 801 (Tex.1992). For an issue to be precluded by prior litigation, it must be shown that

(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; (3) the parties were cast as adversaries in the first action; and (4) the party against whom the doctrine is asserted must have been a party or in privity with a party in the first suit. *Sysco Food Servs., Inc. v. Trapnell,* 890 S.W.2d 796, 801–02 (Tex.1994).

 With respect to the first element, full and fair litigation in the first action, we must consider the following factors: whether the parties were fully heard, whether the court supported its decision with a reasoned opinion, and whether the decision was subject to appeal or was in fact reviewed on appeal. *Mower v. Boyer,* 811 S.W.2d 560, 562 (Tex.1991). Further, a party relying upon collateral estoppel must introduce into evidence the prior judgment and pleadings from the prior suit or the doctrine of collateral estoppel is not applicable in the second proceeding. *Traweek v. Larkin,* 708 S.W.2d 942, 945 (Tex.App.-Tyler 1986, writ ref'd n.r.e.).

### Analysis

 To determine whether there was a full and fair litigation of the title issue during the receivership action, we look to the summary judgment evidence. We note that the receiver's only powers, as requested in the application to begin the receivership, were to make leases and mining contracts. As shown by the application for receivership, the developer wanted only to develop the minerals in the area. There is no document in the summary judgment evidence showing that the receiver had requested or been granted any authority to litigate competing title issues during the receivership. The attorney for Goad, and by extension W.T. Crook and Rinehart, had no recognizable interest in litigating these title interests. There is no summary judgment evidence showing that W.T. Crook and Rinehart, who received consideration from two different individuals for the 1/64 nonparticipating royalty interest, attempted to litigate the title issue during the receivership. Cade, in his pleadings for declaratory judgment, stated that he received notice of an adverse claim to the real property on August 28, 2007, more than a year and a half after the agreed order determining ownership was signed. Thus, the adverse claim was not brought to Cade's attention, or raised in the trial court, before the agreed order was signed.

The agreed order, the only other court document in the summary judgment record, includes no recitation of any adversarial relationships regarding the competing title interest in the 1/64 nonparticipating royalty interest. There is no evidence in the summary judgment record that Wiggins and Tonroy ever made an appearance in the receivership or had notice of the motion that the agreed order approved. There is nothing in the summary judgment record to show that there was any kind of adversarial relationship that would lead to full and fair litigation of the title issue during the receivership. Thus, the record does not show that the issue of the validity of the competing deeds was fully and fairly litigated. *See Mower,* 811 S.W.2d at 562. With only agreeable parties before it, the trial court had no reason to deliver a reasoned opinion or judgment on the title of the 1/64 nonparticipating royalty interest. Further, the record does not indicate whether the agreed order was reviewed on appeal. *See id.* We hold that the summary judgment record before us does not establish the first element required for collateral estoppel, that the facts sought

to be litigated in the second action were fully and fairly litigated in the first action. *See Trapnell,* 890 S.W.2d at 801. Accordingly, Cade did not show his entitlement to summary judgment as a matter of law on the basis of collateral estoppel, and the trial court could not properly grant Cade's motion for summary judgment on that ground. *See Jones,* 710 S.W.2d at 60. We sustain Wiggins and Tonroy's second issue.

### DISPOSITION

Having determined that the trial court erred in granting summary judgment because neither of Cade's asserted grounds, the statute of frauds and collateral estoppel, support summary judgment, we *reverse* the trial court's judgment and *remand* the cause for further proceedings consistent with this opinion.